**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| TIM MCGEACHY, et al., | : | Civil No. 10-3562 (JLL) |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **OPINION** |
| v. | : |  |
|  | : |  |
| OSCAR AVILES, etc., et al., | : |  |
|  | : |  |
| Defendants. | : |  |

---

**APPEARANCES:**

TIM MCGEACHY, #233318
ELIJAH COOK
ANTHONY WILLIAMS, #219339
LUCIUS SMITH, #235786
ELVIS FERATONIC, #225399
DARRYL DENMARK, #219826
DURAN WILLIAMS, #228179
ROMULO GREGORIO, #225363
SEAN HARRIS, #233077
SIHEEN LEGRANDE
HAKEEM LESTER, #230904
TIREKE CHISOLM, #229611
ANTHONY ROSE, #228418
SAM H. CAMPBELL, #222744
NEALSON CONNELL, #212238
WOODROW MILLER, #229325
SALAHDIN TRUWELL, #223106
DWIGHT MCGEACHY, #215460
DEVON CARTER, #222831
JAHMAL JOHN, #229166
LEON SMITH, #213471
WILLIAM CROWLEY
MARC RICCARD, #231700
RONALD LAWRENCE,#230924
RUBEN ACOSTA, #235638
NICGUAN SCOTT, #220832

DARNELL REEVES, #220828
LEONARDO BUCCHERI, #214091
RAYMOND PERRY, #218463
Hudson County Correctional Center
35 Hackensack Avenue
Kearny, NJ 07032

**LINARES**, District Judge:

Plaintiff, Tim McGeachy and 28 other pretrial detainees at Hudson County Correctional Center ("HCCC"), have submitted a Complaint styled as a putative class action against Warden Oscar Aviles, the County of Hudson County, and HCCC. Plaintiffs did not prepay the $350 filing fee. No plaintiff submitted a (certified) six-month prison account statement, which is required before this Court can grant in forma pauperis status, and only one plaintiff - Tim McGeachy - submitted an affidavit of poverty, which is also required for a prisoner who seeks permission to proceed in forma pauperis. As explained fully below, this Court will: (1) deny Tim McGeachy's application to proceed in forma pauperis without prejudice as incomplete because plaintiff McGeachy did not submit a six-month prison account statement; (2) administratively terminate this action without prejudice to reopening in accordance with the terms of this Opinion; (3) direct the Clerk to open 28 new cases in the name of each plaintiff other than plaintiff McGeachy; and (4) administratively terminate each of those cases, without prejudice to reopening each case in accordance with the terms of this Opinion.

## I. BACKGROUND

The Complaint is signed by 29 pretrial detainees confined at HCCC but written by plaintiff Tim McGeachy. The Complaint asserts generally that, since January 1, 2010, pretrial detainees housed in Unit C-5-East have been confined for approximately 17 hours a day, two

men in each 12" X 8" cell, without access to outdoor recreation, even though none have been charged with or found guilty of a disciplinary infraction. The Complaint further alleges that access to the law library is limited to 10 pretrial detainees per week and that this is inadequate for pretrial detainees seeking to do necessary legal research. Finally, the Complaint asserts that there is no access to Muslim services or classes, protestant worship service is conducted in Spanish only, and there is no access to Jewish or Catholic services for pretrial detainees on the C-5-East cell block. Although the Complaint is styled as a class action brought on behalf of similarly situated plaintiffs, the Complaint does not define the members of the putative class or set forth specific regarding what happened to each plaintiff that violated his constitutional rights under 42 U.S.C. § 1983. For violation of plaintiffs' constitutional rights under 42 U.S.C. § 1983, the Complaint seeks declaratory relief, injunctive relief, compensatory damages of $100,000,000.00, and punitive damages of fifty million dollars. (Docket Entry #1.)

## II.  RULE 20 AND IFP PRISONER PLAINTIFFS

The filing fee for a civil complaint is $350.00. The Clerk can not file a civil complaint unless the person seeking relief pays the entire $350.00 filing fee in advance or applies for and is granted in forma pauperis status pursuant to 28 U.S.C. § 1915. See Local Civil R. 5.1(f) ("Any papers received by the Clerk without payment of such fees as may be fixed by statute or by the Judicial Conference of the United States for the filing thereof shall be marked 'received' and the date and time of receipt shall be noted thereon"). When a prisoner seeks permission to file a civil complaint in forma pauperis, the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the prisoner to submit an affidavit that includes a statement of all assets and that the person is unable to pay such fees or

give security therefor, together with a certified copy of the trust fund account statement for the six month period immediately preceding the filing of the complaint, obtained from the appropriate official of each prison at which the prisoner is or was confined. See 28 U.S.C. § 1915(a)(2).[1] If a prisoner is granted permission to file a complaint in forma pauperis, then the PLRA requires the Court to assess the $350.00 filing fee against the prisoner, and to collect the fee by directing the agency having custody of the prisoner to deduct monthly installment payments from the prisoner's prison account equal to 20% of the preceding month's income credited to the account for each month that the balance of the account exceeds $10.00. See 28 U.S.C. § 1915(b). In addition, if the Court grants the prisoner permission to proceed in forma pauperis, then the PLRA requires the Court to screen the complaint for dismissal and to sua sponte dismiss (without service or ordering an answer) any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B).

In this case, the Clerk can not file the Complaint because plaintiffs did not prepay the $350 filing fee and this Court is not granting in forma pauperis status to any plaintiff prisoner. Although plaintiff McGeachy requested permission to proceed in forma pauperis, his application will be denied as incomplete because he submitted an affidavit of income and assets, but he did not submit a certified copy of his trust fund account statement for the six month period immediately preceding the filing of the complaint, as required by 28 U.S.C. § 1915(a)(2). This

---

[1] If a prisoner has, on three or more occasions while incarcerated, brought an action or appeal in a federal court that was dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from immune defendants, then the prisoner may not bring another action in forma pauperis unless he or she is in imminent danger of serious physical injury. See 28 U.S.C. § 1915(g).

Court will deny McGeachy's application to file the Complaint without prepayment of the filing fee without prejudice, and direct the Clerk to administratively terminate this case. Since no other plaintiff either prepaid the $350 filing fee or submitted an affidavit of income and assets, together with a certified six-month prison account statement, the Complaint cannot be filed in behalf of any named plaintiff at this time. However, this Court will explain the relevant law in order to enable plaintiffs to decide whether to proceed individually or jointly, or at all.

As previously stated, the Complaint was signed by 29 plaintiffs. Rule 20 of the Federal Rules of Civil Procedure governs permissive joinder of plaintiffs. The rule provides in relevant part:

> (1) **Plaintiffs.** Persons may join in one action as plaintiffs if:
>
> > **(A)** they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> >
> > **(B)** any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1).

Joinder under Rule 20 is discretionary and, "[i]n exercising its discretion, the District Court must provide a reasoned analysis that comports with the requirements of the Rule, and that is based on the specific fact pattern presented by the plaintiffs and claims before the court. It is insufficient for a court to rely on general assumptions regarding the circumstances of incarceration." Hagan v. Rogers, 570 F. 3d 146, 157 (3d Cir. 2009).

Where more than one prisoner seeks to join in a complaint against a government official or entity, the plaintiffs may prepay the $350 filing fee or seek in forma pauperis status. See Local

5

Civil R. 5.1(f). In the event that plaintiffs prepay the filing fee, then the complaint will be filed as a paid complaint, and the Court will screen the complaint to identify cognizable claims and, as required by 28 U.S.C. § 1915A, dismiss any claim in the compliant that is frivolous, malicious, or fails to state a cliam upon which relief may be granted, or seeks monetary relief from an immune defendant. The Court will also determine whether joinder of plaintiffs is warranted under Rule 20 of the Federal Rules of Civil Procedure with respect to each claim raised in the complaint. See Hagan, 570 F. 3d at 152-57; Fed. R. Civ. P. 20.

In the event that multiple prisoners seek to join as plaintiffs and they do not prepay the $350 filing fee, then each plaintiff must submit a complete application to proceed in forma pauperis if he desires the complaint to be filed in his behalf. In that case, if the Court permits more than one prisoner to join as plaintiff under Rule 20, then the Court is required to collect a $350 filing fee from **each plaintiff prisoner** by directing the agency having custody of each prisoner to deduct the filing fee in monthly installments from each prisoner's account as if each prisoner were filing his own individual complaint. See Hagan, 570 F. 3d at 150 ("[F]iling fees should be assessed against any [prisoner] plaintiff permitted to join under Rule 20 as though each prisoner was proceeding individually"). The Court is also required to screen the complaint for dismissal and to sua sponte dismiss (without service or ordering an answer) any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

## III. CLASS CERTIFICATION

The Complaint submitted is styled as a class action, although no class is defined. Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure after the Court determines that the complaint will not be dismissed under 28 U.S.C. §§ 1915(d)(2)(B) and 1915A. Under Rule 23, a person may not sue as a class representative unless the Court determines by order to certify the action as a class action, see Fed. R. Civ. P. 23(c), after finding that the prerequisites set forth in Rule 23(a) and (b) are satisfied.[2] Such a determination is

---

[2] Rule 23(a) and (b) provide:

(a)   Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) ther are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b)   Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members

(continued...)

generally made by motion in an adversary context after service of the complaint.  Finally, "a

court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).[3]  See Hagan,

570 F. 3d at 159 ("[I]t is plain error to permit [an] imprisoned litigant who is unassisted by

---

[2](...continued)
        not parties to the individual adjudications or would substantially impair or
        impede their ability to protect their interests;

        (2) the party opposing the class has acted or refused to act on grounds that apply
        generally to the class, so that final injunctive relief or corresponding declaratory
        relief is appropriate respecting the class as a whole; or

        (3) the court finds that the questions of law or fact common to class
        members predominate over any questions affecting only individual
        members, and that a class action is superior to other available methods for
        fairly and efficiently adjudicating the controversy.  The matters pertinent
        to these findings include:

            (A) the class members' interests in individually controlling the
            prosecution or defense of separate actions;

            (B) the extent and nature of any litigation concerning the controversy
            already begun by or against class members;

            (C) the desirability or undesirability of concentrating the litigation of the
            claims in the particular forum; and

            (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(a) and (b).

    [3] This Court has the authority to appoint pro bono counsel only if the class representatives
are proceeding in forma pauperis and they have unsuccessfully attempted to obtain an attorney.
See 28 U.S.C. § 1915(e)(1) (where a plaintiff is proceeding in forma pauperis, "[t]he court may
request an attorney to represent any person unable to afford counsel"); Local Civil Rules,
Appendix H.  However, even where the Court determines that appointment of pro bono counsel
is warranted under § 1915(e)(1), "courts have no authority to compel counsel to represent an
indigent civil litigant."  Tabron v. Grace, 6 F. 3d 147, 157, n.7 (3d Cir. 1993) ("We have no
doubt that there are many cases in which district courts seek to appoint counsel but there is
simply none willing to accept appointment").

counsel to represent his fellow inmates in a class action") (quoting <u>Oxendine v. Williams</u>, 509 F. 2d 1405, 1407 (4th Cir. 1975)).

While the determination of whether to certify a class is to be made by order as early as practicable, <u>see</u> R. Fed. R. Civ. P. 23(c)(1)(A), it is generally premature to order the certification of a class of pro se prisoners until after the filing of the complaint, the screening of the complaint for sua sponte dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the service of the complaint on defendants, the appointment of pro bono counsel, and the filing of a motion for class certification. <u>See</u> <u>Hagan</u>, 570 F. 3d at 159 (District Court's order denying certification of class of prisoners was premature where entered prior to service and decision as to whether to appoint pro bono counsel); <u>Link v. Mercedes-Benz of North America, Inc.</u>, 550 F. 2d 860, 864 (3d Cir. 1976) (Although "Rule 23(c)(1) provides that the determination must be made 'as soon as practicable[,]' [t]hat does not necessarily mean at the onset of the litigation. The designation should be made at a time when the trial court has had adequate opportunity to acquaint itself with the case and the complexities likely to be encountered in its disposition").

## IV. ADMINISTRATIVE TERMINATION and REOPENING

As explained above, this Court will deny the application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> filed by plaintiff McGeachy without prejudice because he did not submit a certified copy of his six-month prison account statement, as required by 28 U.S.C. § 1915(b). Because none of the other 28 plaintiffs prepaid the $350 filing fee or applied for <u>in</u> <u>forma</u> <u>pauperis</u> status, and this Court is denying McGeachy's <u>in</u> <u>forma</u> <u>pauperis</u> application, this Court will direct the Clerk to administratively terminate Civil No. 10-3562 (JLL) without filing the Complaint (Docket Entry #1), which has been docketed as "received." However, this Court will reopen Civil No. 10-3562

9

(JLL) if either of the following occurs within 30 days of the date of the entry of this Order: (1) prepayment of the $350 filing fee, in which case this Court will screen the Complaint for dismissal under 28 U.S.C. § 1915A and, if the Complaint survives dismissal, determine if joinder of plaintiffs is warranted under Rule 20; or (2) plaintiff **McGeachy** submits a certified prison account statement for the period from November 2010 through April 2011 in support of his application to proceed in forma pauperis, in which case this Court will decide McGeachy's application to proceed in forma pauperis and, if granted, screen the Complaint for dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

The Court notes that, since the submission of the Complaint, several inmates, in addition to plaintiff McGeachy, have written to the Clerk inquiring as to the status of the case. (Docket Entry Nos. 3-11.) As noted previously, however, the Complaint does not set forth facts stating what happened to each of these individual plaintiffs. While this Court has not screened the Complaint for dismissal for failure to state a claim (since it has not been filed), the absence of specific facts stating what happened to each individual plaintiff raises serious questions concerning the viability of the Complaint. Under these circumstances and in light of the fact that each of the 29 plaintiffs will be required to pay the filing fee if they elect to proceed in forma pauperis and proceed, individually or jointly, this Court will direct the Clerk to open 28 new cases, one in the name of each plaintiff other than McGeachy. Thus, each plaintiff will have an opportunity to respond to this Opinion, to advise the Court how he would like to proceed (if at all), and to set forth his own specific facts in the event that he elects to pursue relief, individually

10

or jointly.[4]  This Court will also direct the Clerk to forward to each plaintiff a blank prisoner

application to proceed in forma pauperis and blank prisoner civil rights complaint form, and to

administratively terminate each case without prejudice to reopening within 30 days.

Although this Court has not formally screened the Complaint for dismissal, this Court

notes that, as written, the Complaint does not assert enough non-conclusory facts to state a claim

under 42 U.S.C. § 1983 on behalf of each plaintiff under the pleading standard announced in

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and the applicable constitutional standard for each

claim.  To survive dismissal under Iqbal, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[4] A statement of facts is similar to a newspaper article.  Facts straightforwardly and specifically state what happened, when and where it happened, and who did what to whom.  For example, stating that a defendant was deliberately indifferent is a conclusion, not a fact, since facts specify what that defendant did, to whom, when and where.  Moreover, to establish that a person is liable under § 1983 as defendant, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948.  "Government officials may not be held liable for the unconstitutional conduct of their subordinates," and supervisors cannot be found liable for knowledge and acquiescence in their subordinates' misbehavior. Id. at p. 1948-49.  And "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 694 (1978).  To state a § 1983 claim against a municipality, a complaint "must identify a custom or policy, and specify what exactly that custom or policy was," McTernan v. City of York, PA, 564 F. 3d 636, 658 (3d Cir. 2009), and specify facts showing a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation, Jiminez v. All American Rathskeller, Inc., 503 F. 3d 247, 249 (3d Cir. 2007) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).  "[A] single incident of police misbehavior by a single policeman is insufficient as *sole* support for an inference that a municipal policy or custom caused the incident."  Brown v. City of Pittsburgh, 586 F. 3d 263, 292 (3d Cir. 2009) (quoting City of Oklahoma City v. Tuttle, 471 U.S. 808, 832 (1985) (Brennan, J., concurring).

inference that the defendant is liable for the misconduct alleged.' " Iqbal, 129 S. Ct. at 1949 (citation omitted). The Third Circuit instructs that, to determine the sufficiency of a complaint under the pleading regime established by Iqbal,

> a court must take three steps: First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Township, 629 F. 3d 121, 130 (3d Cir. 2010); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) ("a complaint must do *more than allege the plaintiff's entitlement to relief*. A complaint has to "show" such an entitlement with its facts") (emphasis supplied). To assist plaintiffs in deciding whether to pursue relief, individually or jointly, this Court will briefly outline the relevant constitutional standards.

A. Conditions of Confinement

The Complaint states that pretrial detainees generally were confined for approximately 17 hours a day, two persons to an 8" X 12" call, without outdoor recreation, but the Complaint does not set forth facts for each (or any) particular plaintiff. The Due Process Clause of the Fourteenth Amendment prohibits punishment of a pretrial detainee prior to an adjudication of guilt in accordance with due process of law. See Bell v. Wolfish, 441 U.S. 520, 535 (1979); Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). As the Supreme Court explained,

> if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate

> goal - if it is arbitrary or purposeless - a court permissibly may
> infer that the purpose of the governmental action is punishment
> that may not constitutionally be inflicted upon detainees qua
> detainees.

Bell, 441 U.S. at 539 (footnote and citation omitted).

The maintenance of security, internal order, and discipline are essential goals which at times require "limitation or retraction of . . . retained constitutional rights." Bell, 411 U.S. at 546. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Id. at 540. The Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's cruel and unusual punishments standard, contains both an objective component and a subjective component:

> Unconstitutional punishment typically includes both objective and
> subjective components. As the Supreme Court explained in
> Wilson v. Seiter, 501 U.S. 294 . . . (1991), the objective component
> requires an inquiry into whether "the deprivation [was] sufficiently
> serious" and the subjective component asks whether "the officials
> act[ed] with a sufficiently culpable state of mind[.]" Id. at 298 . . . .
> The Supreme Court did not abandon this bipartite analysis in Bell,
> but rather allowed for an inference of mens rea where the
> restriction is arbitrary or purposeless, or where the restriction is
> excessive, even if it would accomplish a legitimate governmental
> objective.

Stevenson v. Carroll, 495 F. 3d 62, 68 (3d Cir. 2007).

To satisfy the objective component, an inmate must show that he was subjected to genuine privation and hardship over an extended period of time. See Bell, 441 U.S. at 542 (confining pretrial detainees "in such a manner as to cause them to endure genuine privations and

13

hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment"); Hutto v. Finney, 437 U.S. 678, 686-87 (1978) ("the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.  A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months"); Hubbard, 538 F. 3d at 235 (holding that triple celling of pretrial detainees and use of floor mattresses did not violate Due Process because the inmates "were not subjected to genuine privations and hardship over an extended period of time"); Piskanin v. Hammer, 269 Fed. App'x 159, 162-63 (3d Cir. 2008) (placement of pretrial detainee on suicide watch for brief six day period, during which time he could not contact counsel or file a habeas petition, did not amount to punishment prior to adjudication of guilt); Foreman v. Lowe, 261 Fed. App'x 401 (3d Cir. 2008) (immigration detainee's confinement in maximum security did not violate due process).

B.  Free Exercise of Religion

The Complaint asserts generally that HCCC does not provide Muslim, Jewish or Catholic services, and that Protestant services are in Spanish only, but fails to specify what happened to each plaintiff.  The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ."  U.S. Const. amend. I.  The Free Exercise Clause of the First Amendment prohibits prison officials from denying an inmate "a reasonable opportunity of pursuing his faith."  See Cruz v. Beto, 405 U.S. 319, 322 & n.2 (1972).  However, the mere assertion of denial of religious services does automatically trigger violation of the Free Exercise Clause in the prison context.  If a prisoner's request is "not the result of sincerely held religious beliefs, the First Amendment imposes no obligation on the

14

prison to honor that request." See Sutton v. Rasheed, 323 F. 3d 236, 250 (quoting DeHart v. Horn, 227 F. 3d 47, 52 (3d Cir. 2000)). Secular views are not protected by the Free Exercise Clause, and "[o]nly beliefs which are both sincerely held and religious in nature are protected under the First Amendment." Sutton, 323 F. 3d at 251 (citation and internal quotation marks omitted). Thus, the facts asserted in a complaint must show that a prisoner's request for religious services is based on his own sincerely held religious belief. Id.

Even where religious beliefs are sincerely held, "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." Shaw v. Murphy, 532 U.S. 223, 229 (2001) (quoting Pell v. Procunier, 417 U.S. 817, 822 (1987)). Although "prisoners do not forfeit all constitutional protections," it is settled that "[t]he fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights." Bell, 441 U.S. at 546. Moreover, in deciding an inmate's First Amendment challenge, a court must recognize that "judgments regarding prison security 'are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" Turner v. Safley, 482 U.S. 78, 86 (1987) (quoting Pell v. Procunier, 417 U.S. 817, 827 (1974)). Prison administrators, "who are actually charged with and trained in the running of the particular institution under examination" are the best arbiters of the need for specific prison regulations to maintain institutional safety and promote prisoner rehabilitation. Bell v. Wolfish, 441 U.S. 520, 562 (1979); see also Pell v. Procunier, 417 U.S. 817, 827 (1974) (courts should ordinarily defer to their expert judgment unless officials exaggerate the legitimacy of the interest

behind the regulation).  To guarantee due deference is shown to prison officials, courts examine

the constitutionality of prison regulations using a reasonableness standard set forth in Turner v.

Safley, 482 U.S. 78, (1987).  "[W]hen a prison regulation impinges on inmates' constitutional

rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482

U.S. at 89.  Turner requires courts to weigh four factors in determining reasonableness:  "whether

the regulation has a 'valid, rational connection' to a legitimate governmental interest; whether

alternative means are open to inmates to exercise the asserted right; what impact an

accommodation of the right would have on guards and inmates and prison resources; and

whether there are any 'ready alternatives' to the regulation."  Overton v. Bazzetta, 539 U.S. 126,

132 (2003) (quoting Turner, 482 U.S. at 89-91); see also Fraise v. Terhune, 283 F.3d 506 (3d Cir.

2002).  Furthermore, "the burden is not on the state to prove the validity of the challenged prison

regulation but instead is on the inmate to disprove it."  Williams, 343 F.3d at 217 (citing Overton

v. Bazzetta, 539 U.S. 126 (2003)).

   For example, In O'Lone v. Shabazz, 482 U.S. 342 (1987), Muslim inmates challenged a

New Jersey classification regulation which prohibited inmates assigned to outside work details

from returning to the prison during the day except in the case of an emergency on Free Exercise

grounds because it prevented Muslims assigned to outside work details from attending Juma

services on Fridays.  The Supreme Court rejected the Free Exercise claim, deferring to the

determination of prison administrators that a rule preventing inmates from returning from outside

work details was rationally related to security and rehabilitative concerns relating to work:

> There are, of course, no alternative means of attending Jumu'ah;
> respondents' religious beliefs insist that it occur at a particular
> time.  But the very stringent requirements as to the time at which

> Jumu'ah may be held may make it extraordinarily difficult for
> prison officials to assure that every Muslim prisoner is able to
> attend that service. While we in no way minimize the central
> importance of Jumu'ah to respondents, we are unwilling to hold
> that prison officials are required by the Constitution to sacrifice
> legitimate penological objectives to that end.

Id. at 351-52; see also Fraise v. Terhune, 383 F.3d 506 (3d Cir. 2002) (rejecting inmates' free

exercise challenge to regulation designating Five Percent Nation as a security threat group and

directing members' confinement in a security threat group unit); Williams v. Morton, 343 F.3d

212, 218 (3d Cir. 2003) (rejecting prisoners' free exercise claim and finding "that providing

vegetarian meals, rather than Halal meals with meat, is rationally related to the legitimate

penological interests in simplified food service, security, and staying within the prison's

budget").

C. Access to Courts

The Complaint asserts that access to the law library is generally inadequate for pretrial

detainees to do legal research, but provides no facts showing that the inadequate access caused

actual injury to each plaintiff. Under the First and Fourteenth Amendments, prisoners retain a

right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Monroe v. Beard,

536 F. 3d 198, 205 (3d Cir.), cert. denied, Stover v. Beard, 129 S. Ct. 1647 (2008). "Where

prisoners assert that defendants' actions have inhibited their opportunity to present a past legal

claim, they must show (1) that they suffered an 'actual injury' - that they lost a chance to pursue a

'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy' that may

be awarded as recompense' for the lost claim other than in the present denial of access suit."

Monroe at 205 (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)). To establish

17

standing, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" <u>Monroe</u> at 205-206 (quoting <u>Christopher</u> at 416-17). For example, in <u>Monroe</u>, the United States Court of Appeals for the Third Circuit affirmed dismissal of inmates' access to the courts claim for failure to state a claim:

> In this case, the defendants confiscated all of the plaintiffs' . . . legal materials, including their legal briefs, transcripts, notes of testimony, exhibits, copies of reference books, treatises, journals, and personal handwritten notes. In their initial pleadings, the plaintiffs' claim rested solely on the ground that the defendants confiscated their legal materials, contraband and non-contraband alike. That claim, on its face, was insufficient to state a claim under <u>Harbury</u>. So too were their subsequent amendments, which alleged that they lost the opportunity to pursue attacks of their convictions and civil rights claims but did not specify facts demonstrating that the claims were nonfrivolous. Nor did they maintain that they had no other remedy to compensate them for their lost claims. Even liberally construing their complaints as we must do for <u>pro se</u> litigants, they do not sufficiently allege that they have suffered actual injury.

<u>Monroe</u>, 536 F. 3d at 206 (citations and footnote omitted).

## V. CONCLUSION

Based on the foregoing, this Court will: (1) deny Tim McGeachy's application to proceed

in forma pauperis without prejudice as incomplete because plaintiff McGeachy did not submit a

six-month prison account statement; (2) administratively terminate this action without prejudice

to reopening in accordance with the terms of this Opinion; (3) direct the Clerk to open 28 new

cases in the name of each plaintiff who signed the Compliant (other than plaintiff McGeachy);

and (4) administratively terminate each of those cases, without prejudice to reopening each case

in accordance with the terms of this Opinion.


/s/ Jose L. Linares
**JOSE L. LINARES, U.S.D.J.**

Dated: May 18, 2011